Chief Justice Marshall
delivered tlie opinion of the Court.
Jarvis & Trabue being creditors of Joseph Quigley, by judgment with an execution thereon returned “no property,” filed this bill to subject to the satisfaction of their debt certain slaves, as being the property of said Joseph on the death of his wife, under and by virtue of a deed of trust from Thomas Quigley to J. M. Burton, the true construction and operation of which present the only questions to be considered by this Court.
The deed, professing to be between Thomas Quigley and James M. Burton, “ witnesseth, that the party of the first part, for and in consideration of the sum of one dollar, to him in hand paid by the aforesaid James M, Burton, trustee in trust, for the use and benefit of Eleanor M. Quigley, wife of Joseph Quigley, and the heirs of her body begotten by the aforesaid Joseph Quigley, the receipt of which is hereby acknowledged, as well as in consideration of the interest and well being the grantor herein feels in the future comfort of the aforesaid Eleanor and her aforesaid children, in being and expectancy, hath this day given, granted, &c., to the aforesaid J M. B., trustee in trust as aforesaid, thefollowing slaves, to-wit: (naming them,) together with the future increase of the aforesaid slaves, and each of them. To have and to hold the aforesaid slaves, &c., to the only use &c. of the aforesaid J. M~ *105 B., trustee in trust as aforesaid, and his successor as trustee forever.” The deed then recites, that the slaves had been purchased by the grantor, under a decree in his favor against said Joseph Quigley; then follows a covenant of warranty, which is succeeded by the following clause, viz: “ It being the distinct understanding of the parties hereto, that the aforesaid slaves and each of them are, in no event, to become liable to or for the debts of the aforesaid Joseph Quigley; but said slaves and each of them, and their increase, are to be held, kept and used by the aforesaid trustee, for the sole and exclusive use and benefit of the aforesaid Eleanor, and the heirs, of her body, by the aforesaid Joseph Quigley.” And in case of the death, resignation, removal or refusal of the said trustee, a power is given to the said Eleanor to appoint another.
It is contended, that by force of the words “heirs of her body,” this deed creates an estate tail in Eleanor Quigley, which vested in her husband, subject during her life to the sole and separate use secured to her, and which, at her death, became absolute in the husband* But it is manifest that this construction defeats the benefit intended for the children, and violates the obvious purpose and object of the deed, which, as appears clearly upon its face, was intended to secure the use, not only to the wife, but also to the children, of the marriage. And the only question is, whether there is enough in the deed to effectuate that intention clearly manifested, or whether, by force of the technical expression “ heirs of her body,” the manifest intent and object of the deed is to be sacrificed. If there were nothing in.the deed to show that the expressions referred to were not used in their technical sense as embracing the whole line of issue, the consequence contended for would certainly follow. But it is made clear, beyond dispute, by the words of the deed itself, that the expression “heirs of the body” is not used in this technical sense, but as meaning her children. This is manifest, first from the fact that in trust for the comfort, &c. of the children, as well as of the mother, is set *106 forth as one of the considerations and. as the only consideration, except the nominal one of one dollar, moving the grantor to the execution of the.deed, and again, and with unquestionable certainty, by the words, “ her aforesaid children, in being and expectancy,” used in reference to the words “ heirs of her body,” previously used in the same clause, and which show conclusively that “heirs of her body,” as used in the deed, did not embrace the whole line of her issue by her then husband, but their children only.
The term ‘heirs of the body’ in. wills is very generallyunderstood and taken as words of purchase and to convey an independent interest to children, and not as words of limitation. The same words are so taken when the intention clearly appears to be to give a present interest to the children: such was the construction given to the words by the English Courts, especially when used as applicable to a chattel.
This intended sense of the technical expression, being placed beyond question by the following words, there is no doubt that if this were a will instead of a deed, the words “heirs of her body,” would be regarded as words of purchase, giving an independent interest to the children, and not as words of limitation, annexed to, and describing the estate of the mother, as was decided, at the present term, in the case of Prescott vs Prescott’s heirs, (page 56.) And although the same benignity of construction is not always extended to deeds as to wills, yet as this deed was obviously founded upon motives of benevolence and affection alone, and is in the nature of a marriage settlement, intended expressly to provide, not only for the wife, but also for the children; and as it is most inartificially drawn, we think there is sufficient ground in the general principles of construction, and in the principles which prevail in the construction of marriage settlements and covenants to stand seized, for giving to the words referred to, that operation and effect which properly belongs to the sense in which they were used, as certainly indicated by other parts of the deed. It would be strange, indeed, if when the sense in which a particular phrase is used in such an instrument, is clearly explained, and the deed can operate according to that sense, without violating any principle of law, Courts were obliged to put a different sense upon them, though it should defeat the manifest object of the parties. The contrary principle is, as we believe, generally conceded. There are many cases in marriage *107 settlements and covenants to stand seized, in which the Courts of England have construed “heirs of the body,” and especially with reference to chattels, to be words of purchase, when it was clear, from other expressions or circumstances in the instrument, that the phrase was used in a restricted, and not in a technical sense: (2 Vesey, sen. 660; 3 Atk. 642, &c.) And the cases in which a similar decision has been made upon wills are numerous and familiar. The question, in all such cases, is whether the restricted sense of the words is indicated with sufficient certainty, as we have seen that it is in the present case.
The intent of the grantor is to have its weight in the eonstuiction of deeds.
We therefore construe “heirs of the body,” in this deed, as meaning children in being and expectancy. And although the conveyance to the sole use of the wife and her children in being and in expectancy, might be understood, as giving to the wife an interest in common with her children, and which might go to her husband on her death, yet, as this is not the necessary construction of such a conveyance, and as it is repelled by the provision that in no event shall the slaves or any of them become liable to the debts of the husband, but that they, and each of them and their increase, shall be held for the sole use of the wife and the heirs of her body, that is, her children in being and expectancy, we are of opinion that it will best comport with these provisions and with the obvious intent of the grant, to construe it as giving to the wife no interest beyond her own life, and vesting in the children, at her death, whatever interest she had. In this view, it is unnecessary to determine whether she had a life estate in the whole, with remainder to her children, or whether she had a life estate in an aliquot part only with remainder to them. In either case, the husband would not take her interest on her death, and as none of the children are shown to have died after the date of the deed, there is no pretence that he has any interest derived from them', and therefore no ground for any question as to what would become of the interest of a deceased child.
J. fy W. L. Harlan for appellants; Gricler for appellees.
Under this construction of the deed, the husband had no interest in the slaves to be subjected to his debts, and therefore the decree dismissing the bill is affirmed.